## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROMARIS WALTON, B69607,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-01798-GCS** |
| | ) | |
| **DEANNA BROOKHART,** | ) | |
| **FIERO,** | ) | |
| **MS. ELLIOT,** | ) | |
| **MR. WALKER,** | ) | |
| **MR. KOONTZ,** | ) | |
| **LORIE CUNNINGHAM,** | ) | |
| **J. GARRETT,** | ) | |
| **MISS FLATLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Romaris Walton, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was housed at Lawrence Correctional Center ("Lawrence"). (Doc. 1). Plaintiff alleges that he was housed in a cell with a mentally unstable and disruptive inmate for a few months and that he sought removal from the situation through multiple channels. Plaintiff believes that due to his requests, he was retaliated against when he was terminated from his prison job.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that from approximately February 4, 2021, through April 23, 2021, he was forced to live in a cell with an inmate who had a mental illness that required the administration of psychotropic medications. (Doc. 1, p. 7). Plaintiff alleges the fellow inmate was disruptive, was predisposed to ignoring or breaking prison rules, was loud at night (which deprived Plaintiff of sleep) and was overly aggressive or disruptive. He also tampered with Plaintiff's personal property. On April 23, 2021, Plaintiff informed Defendant Koontz—the dietary supervisor—about his cell circumstances. Defendant Koontz promised to investigate the issue and later informed Plaintiff that only the Warden could change the cell assignment. The warden, however, refused to change the assignment.

---

[1]     The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 7) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC and Wexford and this Court.

On May 1, 2021, Plaintiff informed Defendant Walker – another dietary supervisor—about the situation because other inmates had told him that Defendant Walker helped with issues like this. Walker said cell assignments were completely up to Defendant Brookhart, and he advised Plaintiff to refuse housing. He suggested this might cause a demotion to B-grade, but Plaintiff might not lose his dietary job.

Unsatisfied with these responses, Plaintiff sent a request slip to Defendant Elliot—a placement officer—on May 3, 2021. He got no response. Thus, on May 6, 2021, Plaintiff filed a grievance about the situation. Without warning or cause, Plaintiff was terminated from his dietary job on May 14, 2023. At the time, Plaintiff was still A-grade, and he had not received any disciplinary infractions or other demotions.

On May 20, 2021, Defendant Flatley (a mental health professional) removed Plaintiff from his cell to speak to him about a statement in his pending grievance that suggested suicidal ideation or suicidal intent. Due to the statement, Plaintiff was placed on suicide watch from May 20-24, 2021. Plaintiff alleges that his placement on suicide watch showed that Defendants Brookhart, Flatley, and Elliot were aware of the issues with his cellmate and cell placement. Rather than offer a solution, however, they chose "individually or collectively" to place him on suicide watch.  (Doc. 1, p. 7-8).

Plaintiff alleges that during suicide watch he was deprived of all amenities such as showers, phone calls, yard, job duties, commissary, or recreational activities. He alleges that Defendant Fiero violated his rights because rather than pack Plaintiff's belongings on May 20, 2021, when he went on suicide watch, Fiero instead allowed Plaintiff's cellmate to pack his belongings. In the process, he alleges that his headphones

were broken. Fiero also failed to remove Plaintiff's medications and bring them to suicide watch for regular distribution. As a result, Plaintiff endured four days without his prescriptions.

In association with the stint in suicide watch and Fiero's conduct regarding his property, Plaintiff alleges he was forced to go for months without his CL-20 headphones. This forced him to use ear buds to watch TV. Plaintiff alleges this caused him damage because he already had hearing impairment, and the use of the ear buds exacerbated the impairment. Plaintiff informed Defendant Lorie Cunningham—the Americans with Disabilities Act ("ADA") coordinator—of this issue and others. However, Plaintiff did not get replacement headphones until November 26, 2021. Plaintiff alleges this forced him to endure further damage to his hearing from May 24, 2021, until November 26, 2021. In his closing paragraph he alleges the following:

> Warden Brookhart is a defendant because she signed off on multiple grievances, which had given her detailed information about my cell circumstance. And because she failed to protect me from retaliation, misconduct, and the constitutional rights violations committed against me by her staff. Which there existed proof in my grievances that they had failed to perform/execute, while under her supervision/authority.

(Doc. 1, p. 8).

In addition to the 'statement of claim' that spans two pages, Plaintiff also included narrative paragraphs about the exhibits he appended to his complaint. The exhibits shed additional light on some of Plaintiff's allegations. In particular, Plaintiff alleges that he was hired for his dietary job on April 11, 2021, and he was terminated on May 14, 2021. He claims that per institutional documents about job assignments, dietary jobs were to

last six months to a year. (Doc. 1, p. 12). He further alleges his termination was in retaliation for filing grievances. *Id.* at p. 11.

In addition to the facts described above, Plaintiff alleges Defendant Elliot retaliated against him for filing grievances against her because on July 29, 2021, she placed him with another mentally ill cellmate. (Doc. 1, p. 12).

Plaintiff further alleges that Defendant Cunningham somehow tampered with his medication records and chart to cover-up Fiero's failure to bring his medication to suicide watch. Plaintiff additionally alleges that he was intentionally discriminated against under the ADA. (Doc. 1, p. 13).

Based on the facts alleged, the Court designates the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Koontz, Walker, Flatley, Brookhart, and Elliot for their handling of Plaintiff's requests to change cells;**

**Claim 2:** **Eighth Amendment claim against Defendant Fiero for failing to bring Plaintiff's prescription medications to crisis watch;**

**Claim 3:** **ADA Claim against Defendant Cunningham for failing to replace Plaintiff's headphones in a timely fashion.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly. See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

PRELIMINARY DISMISSALS

Plaintiff presents allegations in his Complaint about Defendant Fiero's handling of his personal property. Specifically, he alleged Fiero allowed his problematic cellmate to pack up his property, and in doing so, the cellmate broke his CL-20's (headphones).

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. XIV, § 1. However, due process requirements are satisfied where there exists a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (stating that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."). The Illinois Court of Claims provides an exclusive remedy for "[a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency[,]" 705 ILL. COMP. STAT. § 505/8(a), and "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit[.]" 705 ILL. COMP. STAT. § 505/8(d). The state remedy for the deprivation of an inmate's property provides an adequate remedy at law. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999).

There is no specific constitutional right that addresses an officer's handling of an inmate's personal property, but to the extent that Plaintiff complains his property was lost or destroyed through Fiero's actions, he cannot maintain a constitutional claim premised on this issue because Illinois state law provides an adequate remedy for loss/confiscation/damage to personal property. Plaintiff's allegations against Fiero are insufficient to state a claim related to his personal property, so these allegations are dismissed.

Additionally, Plaintiff named J. Garrett, a grievance officer, as a Defendant in the caption of the case, but he did not discuss Garrett in the statement of claim section of his complaint. (Doc. 1, p. 7-8). Naming an individual in the case caption, without describing his or her actions in the complaint, is insufficient to state a § 1983 claim. *See Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994).

The Court notes that despite this defect, Plaintiff mentioned Garrett in a narrative description that he provided about his grievances. Specifically, Plaintiff alleges that Garrett took an improperly 'argumentative' position regarding his first grievance related to his housing situation. Specifically, Garrett noted that Plaintiff had not raised concerns about his personal safety to officers in his unit. (Doc. 1, p. 11). Plaintiff alleges Garrett is not a mental health doctor and had no right to comment on the danger posed by his cellmate. These factual allegations are insufficient to state a claim against Garrett because the alleged mishandling of a grievance is not sufficient to sustain an Eighth Amendment claim if the official is not alleged to have participated in the underlying problem. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Plaintiff does not allege that Garrett

participated in his cell placement, so Garrett's mere role in reviewing the grievance is insufficient to state a claim.

DISCUSSION

CLAIM 1

Plaintiff seems to allege that Defendants Koontz and Walker, who were dietary supervisors, failed to help him secure a new cell assignment because they merely told him that only Defendants Elliot or Brookhart could reassign him. Koontz and Walker both fielded Plaintiff's requests, and by his own allegations, they investigated the matter. These individuals simply did not provide Plaintiff with a response he found satisfactory. Based on these allegations it is doubtful that Koontz and Walker could have done anything more, or that they were deliberately indifferent for failing to do more. As dietary personnel, it is unlikely that they had any authority to change cell placement. Thus, Plaintiff has not stated a claim against Defendants Koontz or Walker.

Plaintiff next sent a request slip to Defendant Elliot about his placement on May 3, 2021. Three days later, he also wrote a grievance about his cell assignment. In response to his grievance, Plaintiff alleges Defendant Flatley (a mental health provider) called him out of his cell on May 20, 2021, to discuss the contents of his grievance. Plaintiff states that Flatley wanted to talk to him about his use of the word suicide in his grievance "in reference to freeing [himself] from the mental suffering and potential harm, that [he] was trapped in while inside" his cell with a cellmate he did not like. (Doc. 1, p. 7). Plaintiff contends that Flatley's interaction with him demonstrated that Flatley, Elliot, and

Brookhart, were aware of his desire for a new cell placement. But, instead of changing his cell placement, they chose to "sentence" him to suicide watch. *Id*. at p. 7-8.

This series of events does not form the basis for an Eighth Amendment deliberate indifference claim. At most, Elliot received a request for a cell change just three days before Plaintiff filed a grievance about the same. Inmates are not entitled to demand a specific living situation. Plaintiff also does not describe what, if anything, Elliot ultimately did in response to his request. There is insufficient detail to infer that Elliot acted with deliberate indifference towards Plaintiff's situation.

The contents of his grievance triggered an emergency response from Defendant Flatley, which he contends was unwarranted. However, Plaintiff also admitted that he mentioned suicidal ideation in his grievance. Flatley cannot be faulted for responding to an inmate mentioning the possibility of suicide. Plaintiff attempts to characterize the placement in suicide watch as punitive or retaliatory, but he cannot credibly do so when he admits in the grievance that he discussed suicide.[2]

Plaintiff also raises concerns about the conditions of suicide watch. Specifically, Plaintiff noted that he went for four days without access to a shower, phone, yard, television, or his tablet. These brief deprivations, however, do not rise to the level of a constitutional violation, nor does he describe any injury associated with the same.

---

[2]    Plaintiff attached the grievance to his complaint, and in the grievance, he wrote, "at this point I have no choice but to commit suicide, or protect myself from physical harm, that may be acted out against me, by a mentally unstable inmate[.]" (Doc. 1, p. 18). Plaintiff's statement clearly and unequivocally threatens suicidal behavior.

Plaintiff's only mention of Defendant Brookhart is that she signed off on grievances about his cell placement, his temporary placement in suicide watch, and other issues discussed in his complaint. Being a signatory on a grievance, however, is not enough to establish deliberate indifference. *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (noting that "[p]rison officials who simply processed or reviewed inmate grievances lacked personal involvement in the conduct forming the basis for the grievance."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (ruling against an inmate on a grievance does not cause or contribute to a constitutional violation). Mere participation in the grievance process does not form the basis for an Eighth Amendment claim. To the extent Plaintiff assumed that Brookhart knew about his wish for a cell transfer based on Flatley's suicide inquiry, this assertion is not supported. Flatley inquired because Plaintiff wrote in his grievance that he may become suicidal. Nothing about this series of events imputes knowledge to Brookhart. Accordingly, Plaintiff does not state a claim against Defendant Brookhart related to his cell placement.

In sum, none of the allegations against Defendants Koontz, Walker, Elliot, Flatley or Brookhart is sufficient to allege an Eighth Amendment deliberate indifference claim based on the issues Plaintiff had with his cellmate in April or May of 2021.

## CLAIM 2

Plaintiff alleges that in addition to mishandling his personal property, Defendant Fiero also failed to remove his prescription medication from his property box, and thus failed to bring his medication to the crisis watch area. As a result, Plaintiff went approximately 90 hours without his medication. While the delay or denial of a

prescription medication may amount to deliberate indifference, not all delays rise to this level. A deliberate indifference claim related to a delay of medication requires a culpable state of mind by the alleged wrongdoer. *See, e.g.*, *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (noting that a delay in medication only amounts to an Eighth Amendment violation if the delay was deliberate or reckless in the criminal law sense). Here, Plaintiff's allegations, at most, lean more towards laziness or negligence, rather than deliberate or reckless conduct.

Even if Plaintiff had allegations that suggested Fiero was deliberately indifferent to a serious medical need, he has not identified any discrete injury resulting from the short stint without his medication. In cases based on a delay in treatment, the plaintiff must show that the delay caused some harm, such as "unnecessarily prolong[ing] pain." *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021). *See also Cherry v. Alsteen*, No. 20-2688, 858 Fed. Appx. 189, 192 (7th Cir. May 27, 2021) (finding no deliberate indifference where an inmate missed one dose of pain medication and alleged hours of suffering, but there was no showing the officers actually caused his injury). Here, Plaintiff does not allege that Fiero's actions caused him some specific harm such as prolonged intense pain. Additionally, to recover money damages for an Eighth Amendment claim, an inmate must allege that he actually sustained an injury, and Plaintiff has not done so here. *See, e.g.*, *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033-34 (7th Cir. 2019) (noting that a plaintiff who alleges deliberate indifference must show injury due to a defendant's actions). For all these reasons, Plaintiff's allegations against Defendant Fiero about his

role in transmitting his medications to crisis watch are insufficient to sustain an Eighth Amendment claim as pled.

**CLAIM 3**

Plaintiff alleges that Defendant Cunningham violated his rights under the ADA because it took nearly six months for him to receive replacement headphones. In the intervening time, Plaintiff had to use ear buds to listen to his television or tablet, which he believed caused him further hearing damage.

Under the ADA, a plaintiff must prove he is a qualified individual with a disability and that he was denied access to a service, program, or activity because of his disability. *See Shuhaiber v. Illinois Department of Corrections*, 980 F.3d 1167, 1170 (7th Cir. 2020). The ADA defines a disability as either "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "walking, standing, bending, and caring for oneself." *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). To recover damages based on an ADA claim, a plaintiff must identify intentional conduct (and not mere negligence) by a named defendant. *See, e.g., Barnes v. Gorman*, 536 U.S. 181, 187–189 (2002) (analyzing § 202 of the ADA and § 504 of the Rehabilitation Act). This requires the plaintiff to plausibly allege that the defendants acted with deliberate indifference to rights conferred under the ADA. *See Lacy v. Cook County, Illinois*, 897 F.3d 847, 862–863 (7th Cir. 2018).

Plaintiff's ADA claim fails for multiple reasons. First, he alleges that he was forced to watch his television or listen to music in a way that he found unsatisfactory, but he

does not allege that the headphone issue prevented him from participating in these activities, or from accessing other programs or services at the prison. Second, Plaintiff does not indicate whether the activities are major life activities. In fact, they appear to merely be recreational activities as opposed to necessities. Third, even if Plaintiff established that he was prevented from participating in a major life activity, he has not alleged that Defendant Cunningham acted with deliberate indifference as opposed to negligence, so he is not entitled to damages on his claim as pled.

Plaintiff's ADA claim fails for an additional reason. The ADA does not permit suits against defendants in their individual capacities. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001). This is because the discrimination prohibitions under the ADA are aimed at a "public entity." 42 U.S.C. § 12132. A "public entity" is defined as "any State or local government" and "any department, agency, . . . or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131. As such, only the state agency or an official acting in his or her official capacity may be sued under the ADA. *See, e.g.*, *Jaros*, 684 F.3d at 670 (noting that "employees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."). *See also Phelps v. Phillips*, Case No. 14-cv-00891-JPG, 2014 WL 4537315, at *4 (S.D. Ill. Sept. 10, 2014) (noting that "ADA [] claims cannot proceed against the individual defendants named in connection with the claim."). Thus, Plaintiff's ADA claim can only proceed against the IDOC Director in his/her official capacity.

Based on the foregoing analysis, Plaintiff has not identified a viable claim against any of the named Defendants. The Court will allow Plaintiff an opportunity to amend his complaint with the benefit of the information discussed in this Order. Plaintiff will have 30 days from the date of this Order to file an Amended Complaint. The Amended Complaint will completely replace the earlier complaints. *See Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Failure to submit an Amended Complaint on time could result in the dismissal of this entire lawsuit for failure to state a claim or for failure to prosecute. *See* FED. R. CIV. PROC. 41(b). *See also Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997) (noting that dismissal is allowed for failure to comply with a court order). However, Plaintiff should be aware that he has already incurred two strikes[3] in this District, and if he does not file a valid amended complaint in this case, he could incur a third strike. Alternatively, if Plaintiff is convinced that he cannot state a valid claim based on the contents of this order, he may instead opt to voluntarily dismiss this action to avoid incurring a strike under 28 U.S.C. § 1915(g).[4]

---

[3]    *Walton v. Wilson, et al.*, Case No. 22-cv-2238-DWD (S.D. Ill. 2023); *Walton v. Brookhart, et al.*, Case No. 22-cv-2908-MAB (S.D. Ill. 2023).

[4]    Section 1915 provides that "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

## DISPOSITION

Plaintiff is **DIRECTED** to file an Amended Complaint within 30 days of this Order. To assist him with preparing an amended complaint, the Clerk of Court is directed to mail Plaintiff a copy of the standard civil rights complaint form along with this Order. If Plaintiff fails to file an amended complaint, his case may be dismissed for failure to state a claim or for failure to prosecute.

**IT IS SO ORDERED.**

**DATED:  December 12, 2023.**

Digitally signed
by Judge Sison
Date: 2023.12.12
13:22:37 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**