THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROMARIS WALTON, B69607,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-01798-GCS |
| | ) |
| **DEANNA BROOKHART,** | ) |
| **FIERO,** | ) |
| **MS. ELLIOTT,** | ) |
| **MR. WALKER,** | ) |
| **MR. KOONTZ,** | ) |
| **LORIE CUNNINGHAM,** | ) |
| **J. GARRETT,** | ) |
| **MISS FLATLEY,** | ) |
| **ANDREW WALTER,** | ) |
| **RICE,** | ) |
| **JIMMIE MUSGRAVE,** | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Romaris Walton, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Sheridan Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center ("Lawrence"). (Doc. 11). The Court found Plaintiff's original complaint insufficient to state a claim (Doc. 10), and he filed a timely Amended Complaint with exhibits (Doc. 11).

Plaintiff's Amended Complaint (Doc. 11) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

The primary focus of Plaintiff's amended complaint is an ongoing course of retaliation at Lawrence. Specifically, he alleges that shortly after he filed grievances and lawsuits, he experienced a variety of situations that he believed were motivated by retaliation. First, Plaintiff alleges that he began work in the dietary department on April 11, 2021, but he was terminated from that role without cause on May 14, 2021. Prior to his termination, he had asked Defendants Koontz and Walker (dietary supervisors) to help him relocate to a new cell because his cellmate at the time was seriously mentally ill ("SMI") and had disruptive behaviors. Koontz and Walker presumably communicated these requests to Defendants Elliott (placement) and Brookhart (warden), but they informed him he would not be relocated regardless of his circumstances.

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 7) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

He contends that his termination from the dietary job was a by-product of a grievance that he submitted May 6, 2021, about cell placement. His grievance advanced to the second level of review on May 13, 2021. He further contends Defendants Koontz and Walker (dietary supervisors) played a role in his termination.

Plaintiff also tried to raise the issue of cell placement with Defendant Musgrave, a counselor, both via grievances and during face-to-face interactions, but Musgrave offered no reprieve. (Doc. 11, p. 10). Plaintiff told Musgrave he felt unsafe due to bullying, theft, aggressive mood swings, and sleep deprivation caused by his then-cellmate. Musgrave did not act to resolve the situation. Plaintiff further alleges that Defendant Jamey Garrett, a grievance officer, entirely refused to assist with these problems by choosing not to respond to grievances at all. (Doc. 11, p. 10).

Following his termination, Plaintiff alleges that the second event of retaliation occurred on May 20, 2021, when he was forced onto an unfounded suicide watch based on a statement he made in his May 6, 2021, grievance about suicidal intention. He argues that this should not have been done because he assured Defendant Flatley that he was not suicidal. (Doc. 11, p. 12). Instead, he insists that Defendants Flatley and Musgrave should have realized that his real problem was his cellmate, and they should have tried to contact placement to relocate him. Rather than take any helpful action, Flatley and Musgrave sent him to suicide watch where conditions were harsh and restrictive; they then allowed him to be released back with the cellmate that caused him distress in the first place.  (Doc. 11, p. 11-12).

On the day he was placed on suicide watch, and just shortly before his placement, Plaintiff alleges that a court order was issued in another federal lawsuit in this District that required him to file an amended complaint.[2] He alleges that Defendant Brookhart was a defendant to that lawsuit, so she would have known about that order, and she chose to retaliate by forcing Defendants Musgrave and Flatley to place him in suicide watch. He characterized this as retaliatory and designed to impede his access to the courts by shortening the window of time he had available to draft a new pleading by at least four days. (Doc. 11, p. 12-13). Plaintiff further claims that this pervasive retaliation deterred him from exercising his First Amendment right to file grievances and lawsuits. (Doc. 11, p. 13).

Plaintiff adds that Defendant Elliott, the placement officer, was long aware of his problems with his then-cellmate, but even after crisis watch, she refused to relocate him to a new cell placement. Plaintiff ultimately lived in that cell from February 4, 2021, until June 3, 2021, at which time he sought and received assistance from internal affairs. (Doc. 11, p. 13). He claims defendants Brookhart, Elliott, Flatley, Koontz, Walker, Garrett, Musgrave, and Fiero all knew of his personal fears and the danger of his housing assignment but made no efforts to investigate or remedy the situation.

Plaintiff goes on to allege that he experienced a third instance of retaliation in July 2021. He claims that he lodged a Prison Rape Elimination Act ("PREA") report against a

---

[2]   *Walton v. Litherland, et al.*, Case No. 3:21-cv-00123-NJR (S.D. Ill.). An amended complaint was ordered in this case on May 20, 2021, and was received June 8, 2021. (Doc. 10, 11). On the amended complaint, Plaintiff was allowed to proceed on several claims (Doc. 15), and he pursued them all the way to merits summary judgment in March 2024 (Doc. 59).

correctional officer on July 8, 2021, and followed up by phone. (Doc. 11, p. 14). That same month, Plaintiff was relocated to a cell with another SMI inmate. He and the inmate did not get along, and he found the inmate's behaviors to be erratic and disruptive. Plaintiff grieved the issue and contacted Defendants Garrett, Brookhart, and Elliott, but before anything came of the grievance the fellow inmate was sent to crisis watch and left the cell.

On August 12, 2021, yet another SMI inmate was placed in Plaintiff's cell. Plaintiff alleges that Defendant Elliott placed him with another SMI inmate as a form of punishment for filing grievances, lawsuits, and PREA reports. (Doc. 11, p. 14). The new cellmate also exhibited disruptive behaviors, but Plaintiff claims that by that time he was "completely deterred from utilizing [his] right to file grievances, civil complaints, [or] PREA violations," so he did nothing. (Doc. 11, p. 14). Plaintiff remained in this cell placement from August 12, 2021, until October 6, 2021, when he was transferred to another prison.

Plaintiff repeats allegations from his original complaint faulting Defendant Fiero for improperly delegating authority over the handling of his personal property when he was sent to crisis watch in May 2021. Specifically, he claims that Fiero allowed his former cellmate to pack up his property instead of doing it himself. This resulted in Plaintiff's medications being packed up instead of being delivered to crisis watch for dispensation, and it led to his CL-20 headphones being broken. Without his mediations, Plaintiff alleges he was at risk of a heart attack or stroke and chronic pain, and he could also be at acute risk for future complications related to the time he spent without mediations. As to the

headphones, Plaintiff claims he was required to go without proper headphones to meet his needs from May 20, 2021, until November 26, 2021. (Doc. 11, p. 16-20). He claims this caused him further hearing damage because in the interim, he used ear buds.

Plaintiff alleges that he informed Defendant Lori Cunningham about his need under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq., for new CL-20 headphones. He claims the headphones are essential to "major life activities" because without them he could not watch television or his tablet. (Doc. 11, p. 20). Plaintiff informed Cunningham about the issue on May 27, 2021, and she indicated she was aware and had informed Defendant Andrew Walter (an ADA coordinator in Springfield).

Finally, Plaintiff alleges that Defendant Rice violated his right to Equal Protection because he did not allow Plaintiff a make-up commissary shopping opportunity while other inmates in his regular housing location received such an opportunity while Plaintiff was on crisis watch. He grieved the issue but was told only Defendants Rice or Brookhart had the authority to allow him an extra shopping opportunity. (Doc. 11, 22). Plaintiff alleges he does not know if Brookhart might have used her ultimate authority in a further act of retaliation by instructing Rice to refuse Plaintiff's request for an extra commissary shopping opportunity.

At the end of the factual allegations, Plaintiff gives a short summation of supporting exhibits. (Doc. 11, p. 24-25). He seeks monetary damages. In support of the complaint, he submitted 47 pages of exhibits, which include grievance documentation, excerpts of a counseling log, medication administration records, and more. (Doc. 11).

Based on the allegations in the Amended Complaint, the Court designates the following claims:

> **Claim 1:** **First Amendment retaliation claim against Defendants Brookhart, Elliott, Koontz, Walker, Flatley, and Musgrave concerning Plaintiff's requests to be moved in May 2021;**
>
> **Claim 2:** **First Amendment retaliation claim against Defendants Brookhart and Elliott concerning Plaintiff's July 2021 PREA report and his requests for a change in cell placement;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Defendant Fiero for his handling of Plaintiff's property and his failure to transmit medications to crisis watch in May 2021;**
>
> **Claim 4:** **Eighth Amendment deliberate indifference claim against Defendants Cunningham or Walter for their handling of Plaintiff's requests for new CL-20 replacement headphones from May 27, 2021, to November 26, 2021;**
>
> **Claim 5:** **Fourteenth Amendment equal protection claim against Defendant Rice for refusing a make-up commissary shop for Plaintiff or First Amendment retaliation claim against Rice or Brookhart related to the same incident.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## PRELIMINARY DISMISSALS

In the first order of review under § 1915A, the Court noted that a plaintiff cannot state a valid claim by simply alleging that a defendant mishandled a grievance, without otherwise demonstrating that he or she participated in the underlying constitutional violations. (Doc. 10, p. 7-8). In the Amended Complaint, Plaintiff has again included allegations against Defendant Jamey Garrett, a grievance officer, premised on the same scenario. He alleges that in May 2021, he informed Garrett in multiple grievances that he was having problems with his cellmate, but Garrett did nothing at all and gave "excuses." (Doc. 11, p. 10-11). Later in the complaint, he alleges that Garrett also received a grievance in July 2021 about unsafe cell conditions. (Doc. 11, p. 14). As the Court previously explained, a claim premised solely on the processing of a grievance is insufficient where the named individual did not also cause or participate in the underlying violations that are alleged. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Plaintiff's Amended Complaint does nothing to change the analysis concerning Defendant Jamey Garrett, and the Court finds the allegations are insufficient to state a claim as to that individual.

## DISCUSSION

*Claim 1*

Plaintiff alleges that due to the suspicious timing of his first complaints about his cell placement in late April and early May 2021, and termination from his dietary job, retaliation can be inferred on behalf of Defendants Brookhart, Elliott, Koontz, and Walker. He explains that he told Koontz and Walker his concerns about his cell placement, and they presumably contacted placement officer Elliott about the situation

but then told him nothing could be done. Shortly after grieving the issue, he was terminated from his job without cause. He claims the termination was a by-product of his grievance about cell placement, and his queries to Koontz and Walker.

Plaintiff further alleges that his grievance contained statements about suicidal ideation that were premised on the despair caused by living with his SMI-cellmate, but rather than genuinely address his concerns, Defendants Brookhart, Elliott, and Flatley (a mental health provider) retaliated against him by placing him on crisis watch. In another incident of suspicious timing, he claims that this all transpired just hours after he was directed to file an amended complaint in a separate federal lawsuit. He suggests the suspicious timing is further proof of retaliation, and one of the reasons for the retaliation was to impede or hinder his litigation and grievance efforts.

Plaintiff implicates Defendant Musgrave, a counselor, in the retaliation both as a recipient of his detailed grievances and because he spoke to Musgrave face-to-face at his cell front about these problems. Plaintiff has provided proof that he interacted with Musgrave face-to-face in the form of a counseling log. He alleges that despite his pleas for assistance, Musgrave simply informed him that he could not remedy the issue.

"First Amendment retaliation cases require the petitioner to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.* The test of actionable retaliation is usually whether the retaliatory conduct

alleged would "deter a person of ordinary firmness" from the exercise of his First Amendment rights. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Court will assume for purposes of analyzing the complaint, that Plaintiff's grievances and verbal pleas for assistance were protected speech.

Although suspicious timing alone is usually not enough to sustain a retaliation claim, the Court will read Plaintiff's complaint broadly in his favor at this early juncture, and it will allow him to proceed against Defendants Brookhart, Elliott, Koontz, Walker, Flatley, and Musgrave for their alleged roles in retaliating against him in May 2021 for filing grievances and engaging in litigation. Plaintiff alleges that as a direct result of his grievance and litigation activity, these individuals terminated him from his job and refused to offer any remedy for his concerns about living in a cell environment that he felt was a danger to his safety. He further alleges that these incidents caused him concern about future First Amendment activity, and ultimately, it deterred him from filing grievances later during his time at Lawrence. These allegations are sufficient to proceed beyond initial review.

*Claim 2*

Plaintiff alleges that the retaliation continued in July 2021 when he filed a PREA report and grievances. He claims he was twice placed with additional SMI inmates who posed risks to his safety. Plaintiff first grieved the issue in July 2021. But when he got a second SMI cellmate in August 2021, he became fearful of the consequences of filing future grievances, and he opted not to do anything. He alleges he was forced to live in a dangerous cell situation until he was transferred in early October 2021. Plaintiff

specifically associates Defendants Brookhart and Elliott with this claim, and at this preliminary juncture, he may proceed against them concerning the alleged retaliation.

*Claim 3*

Plaintiff repeats allegations in his amended complaint about Defendant Fiero's handling of his personal property. Specifically, he alleges that Fiero's failure to follow rules or procedures about the packing of his property led to his medications not making it to crisis watch and to his headphones being broken.

First, the failure to follow prison policies or procedures, or even state laws, is insufficient to state a claim under § 1983. To the extent Fiero simply failed to follow protocol, this is not actionable under § 1983.

Second, the Court already explained at length that Plaintiff's allegations against Fiero were not sufficient to make out any sort of deliberate indifference claim related to a few missed doses of his medication. (Doc. 10, p. 10-12). Plaintiff attempts to bolster this claim by alleging that he may suffer future health consequences from having missed a few of his medications, but the mere possibility of some unquantifiable future harm is not enough to state an Eighth Amendment claim for damages under § 1983. Additionally, even if Fiero had some initial responsibility for not transmitting Plaintiff's medications to crisis watch, there is no indication that after Plaintiff reported to crisis watch Fiero received word that Plaintiff's medications were missing. For example, Plaintiff does not allege that Fiero worked in crisis watch nor does it allege that Fiero ignored his requests for medication while Plaintiff was in crisis watch. Plaintiff would likely have needed to inform someone other than Fiero that his medications were missing and that he needed

his medications during his time in crisis watch. On the information presented, the Court is not persuaded that there is a plausible claim against Fiero concerning the medication.

As for the broken headphones, at best this can be understood as a deprivation of property claim. The Court previously explained that the Illinois Court of Claims offers an adequate remedy for inmates to resolve lost or damaged property claims. As such, Plaintiff cannot proceed further against Fiero on this issue. (Doc. 10, p. 6). *See also Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (finding that an Illinois prisoner had an adequate post-deprivation remedy in state court for confiscated personal property).

*Claim 4*

Plaintiff also rehashes his allegations against Defendant Cunningham that were previously discussed at length, and he adds Defendant Andrew Walter, the alleged Springfield ADA coordinator. The Court already explained at great length the reasons that this claim was insufficiently pled, and nothing in Plaintiff's amended complaint changes this analysis. (Doc. 10, p. 12-13). At most, Plaintiff's complaint can be read as alleging that Cunningham and Walter were negligent because of the time it took him to receive new headphones, but negligence is not enough to state a viable ADA claim. *See, e.g., Lacy v. Cook County, Illinois*, 897 F.3d 847, 862-863 (7th Cir. 2018) (applying deliberate indifference standard to such claims). Accordingly, Claim 4 will be dismissed for failure to state a claim.

*Claim 5*

In the amended complaint, Plaintiff has added a new claim against Defendant Rice, the commissary supervisor at Lawrence. He alleges that while he was on crisis

watch in May 2021 his regularly assigned housing unit was allowed to shop commissary. Rice, however, denied Plaintiff a make-up shopping opportunity. Plaintiff argues that this violated his right to Equal Protection, because he was treated differently than other similarly situated individuals. Plaintiff has not identified a protected characteristic, so it does not appear he is pursuing an equal protection claim based on his membership in a protected class. This leaves the possibility that he means to pursue a class-of-one claim.

An equal protection claim premised on a "class of one" theory alleges that an individual has "intentionally been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Prisoners do not surrender their rights to equal protection at the prison gate. Unequal treatment among inmates, however, is justified if it bears a rational relation to legitimate penal interest." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). The Seventh Circuit has noted in recent years that the exact nature of proof required for a class-of-one claim is unsettled, but it has recently stated that, "a class-of-one plaintiff [must] plead and prove that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Frederickson v. Landeros*, 943 F.3d 1054, 1066 (7th Cir. 2019) (the presence of animus is powerful evidence of potentially irrational government conduct, government conduct motivated solely by personal dislike is the canonical example of irrationality and arbitrariness). *See also Jordan v. Cockroft*, No. 12-1633, 490 Fed. Appx. 813, 815-816 (7th Cir. Aug. 1, 2012) (noting the Court is divided on the necessity of showing

illegitimate animus but finding that a plaintiff must at least show intentionally discriminatory treatment).

Plaintiff alleges that he was treated differently than other similarly situated individuals because the rest of his housing unit got to shop while he was on crisis watch, and he did not get a make-up shopping opportunity. It is not entirely clear that Plaintiff has identified other similarly situated individuals because he was on crisis watch when the shop occurred, and the others he talks about were in regular housing. Even assuming he has identified others who were situated the same but treated differently, he cannot otherwise make out a class-of-one claim. Here, Plaintiff suggests that Rice *might* have been directed by Brookhart to deny him a make-up commissary shopping opportunity, but this would go only to Brookhart's reasoning and not to Rice's own personal beliefs or conduct. Thus, Plaintiff has not established that Rice personally acted deliberately to deny him of something with no rational basis.

Additionally, the Court finds that Plaintiff's suggestion that Brookhart *might* have orchestrated this as further retaliation strains the bounds of plausibility and is not enough to make out a retaliation claim. Therefore, Claim 5 will be dismissed as to Rice and Brookhart for failure to state a claim under a class-of-one theory or a more traditional First Amendment retaliation theory.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Amended Complaint (Doc. 11) survive initial screening as described above against Defendants Brookhart, Elliott, Koontz, Walker, Flatley, and Musgrave. By contrast, Claims 3-5 are insufficient to

state a claim, and Plaintiff has also failed to state a claim against Defendant J. Garrett. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Fiero, Lorie Cunningham, J. Garrett, Andrew Walter, and Rice.

The Clerk of Court is **DIRECTED** to prepare for Defendants Deanna Brookhart, Ms. Elliott, Mr. Walker, Mr. Koontz, Miss Flatley, and Jimmie Musgrave: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 11), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

DATED:  April 16, 2024.

Digitally signed by Judge Sison
Date: 2024.04.16 14:16:41 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.