UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROMARIS WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-01798-GCS |
| | ) | |
| DEANNA BROOKHART, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Romaris Walton, an inmate in the Illinois Department of Corrections ("IDOC") currently confined at Robinson Correctional Center, filed this action pursuant to 42 U.S.C. § 1983, related to retaliation in violation of the First Amendment that he experienced after requesting a different cell placement while incarcerated at Lawrence Correctional Center ("Lawrence"). Defendant Kelley argues that summary judgment should be granted in her favor because Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. 49, 50). For the reasons explained below, the Court agrees with Defendant Kelly and **GRANTS** the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 49).

PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on May 30, 2023. (Doc. 1). On December 12, 2023, the Court dismissed Plaintiff's Complaint for failure to state a claim and permitted Plaintiff to file an amended complaint within 30 days. (Doc. 9). Plaintiff filed his Amended

Page 1 of 11

Complaint on January 18, 2024. (Doc. 10).

On April 16, 2024, the Court completed a preliminary review of Plaintiff's Initial Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 12). Based on the allegations in the Amended Complaint, the Court allowed Plaintiff to proceed on the following count relevant to Defendant Kelley:

> **Count 1:** **First Amendment retaliation claim against Defendants Brookhart, Elliott, Koontz, Walker, Kelley,[1] and Musgrave concerning Plaintiff's requests to be moved in May 2021.**

*Id.* at p. 14. Defendant Kelley moved for summary judgment because Plaintiff failed to exhaust his administrative remedies against her. (Doc. 49, 50). No other Defendants in this case allege that Plaintiff has failed to exhaust his administrative remedies against them. (Doc. 53).

### FACTUAL BACKGROUND

Plaintiff and Defendant have limited their discussion for exhaustion of administrative remedies to five grievances within Plaintiff's grievance record. (Doc. 50, p. 2-9; Doc. 52, p. 2-7). The Court will focus its exhaustion analysis on these five grievances.

### 1. Grievance No. 05-21-054

Walton filed this grievance on May 6, 2021. In the grievance, Plaintiff complained about his cell placement because his cellmate was severely mentally ill and a threat to

---

[1] Plaintiff erroneously identified Defendant Kelley in his complaint as "Miss Flatley." (Doc. 34). He also erroneously identified her as Ms. Flatley and Ms. Fatulia in his grievances.

Walton's safety. (Doc. 50-2, p. 138-139). Plaintiff alleged that he had "no choice but to commit suicide, [sic] or protect [him]self from physical harm." *Id*. at p. 139. The grievance named several prison officials but did not name Defendant Kelley. *Id.* at p. 138-139. This grievance was denied by a Grievance Officer ("G/O"). *Id.* at p. 137. The Administrative Review Board ("ARB") did not review this grievance on the merits on procedural grounds because it did not comply with 20 ILL. ADMIN. CODE § 504.810, as it failed to include the dates of the conduct that formed the basis for the grievance. *Id.* at p. 136.

2.      *Grievance No. 06-21-018*

Plaintiff filed this grievance on May 27, 2021. The grievance alleged that a correctional officer retaliated against Plaintiff for filing grievances. (Doc. 50-2, p. 70-71). The correctional officer told other inmates that Plaintiff had been placed in segregation, that he was afraid of his cellmate, and that he had been moved because he was working with prison staff as an informant. *Id.* The grievance also alleged Plaintiff was removed from his work assignment as retaliation for filing grievances. *Id*. at p. 71. The grievance claimed the people retaliating against Plaintiff were the correctional officer and "other high-ranking [Lawrence] staff members that [Plaintiff had] pending grievances, [sic] and lawsuits against." *Id*. The grievance named several Lawrence officials, but not Defendant Kelley. *Id*. This grievance was denied by the G/O, the Chief Administrative Officer ("CAO"), and the ARB. *Id.* at p. 68-69.

3.      *Grievance No. 06-21-101*

Plaintiff filed this grievance on June 8, 2021. The grievance alleged that shortly after Plaintiff was removed from crisis watch, a Mental Health Professional later

identified as Defendant Kelley declined to speak to him unless he submitted a request slip asking to speak with her. (Doc. 50-2, p. 124). In his appeal to the ARB, Plaintiff submitted a letter elaborating on his complaint, including the claim that "retaliation plays out in all areas of the needs of the inmate (Dental, mental health, assignment details, Physical health ADA Accommodations, Legal mail/personal mail correspondences, commissary access, and even have constant access to [three meals per day]." *Id.* at p. 126. The G/O, the CAO, and the ARB denied this grievance for failing to comply with Section 504.810 because it did not include an incident date. *Id.* at p. 122, 123.

**4.      *Grievance No. 08-21-063***

Walton filed this grievance on August 5, 2021. The grievance alleged that prior grievances were not being appropriately processed and/or disappearing from the system. (Doc. 50-2, p. 84). Additionally, Plaintiff wrote that he was "thankful for. . . Counselor Musgrave, and (MHP) [Kelley] for basically saving my life on May 20, 2021." The G/O denied this grievance because it was duplicative of two prior grievances, including Grievance No. 06-21-018, and for failing to include incident dates in violation of Section 504.810. *Id.* at 23. The CAO concurred with the G/O's recommendation in September 2021. *Id.* Plaintiff then appealed to the ARB. The ARB rejected the appeal because the ARB had addressed the issue in response to Grievance No. 05-21-054. *Id.* at 21.

**5.      *Grievance No. 08-21-225***

Walton filed this grievance on August 26, 2021. This grievance re-stated a prior grievance which Plaintiff claimed was not processed appropriately. (Doc. 50-2, p. 11). The

basis for the complaint, as alleged in both Grievance No, 08-21-225 and the prior grievance, appears to be that Plaintiff was not moved to another cell after being taken off suicide watch on May 24, 2021. *Id.* Plaintiff mentioned Defendant Kelley (as "Ms. Flatley") because she deemed Grievance No. 05-21-054 an emergency and put Plaintiff on suicide watch. *Id.* at p. 11-12, 136-139. The G/O denied this grievance because, contrary to Plaintiff's contention, the prior grievance that he filed was not lost. Rather, it was returned to him after the warden determined it did not constitute an emergency grievance and needed to be re-filed, which Plaintiff did not do. (Doc. 50-5, p. 216). The ARB denied the grievance on the same grounds. (Doc. 50-2, p. 9). Both the G/O and the ARB noted that, to the extent that Grievance No. 05-21-054 had already been addressed, it would not be addressed again. (Doc. 50-2, p. 9; Doc. 50-5, p. 216).

### LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgment. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues

relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's

Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83-84. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and

provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Plaintiff has not exhausted his administrative remedies against Defendant Kelley. Three of the five grievances (No. 05-21-054, No. 06-21-101, and No. 08-21-063) were not administratively exhausted. Plaintiff contends that these grievances were exhausted because he could not "make [prison officials or the ARB] respond/review [his] grievance claims." (Doc. 52, p. 4-5). That may be, but Plaintiff was required to comply with the procedural rules governing the grievance process. *See Dole*, 439 F.3d at 809. The first three grievances were not reviewed on the merits by the ARB because Plaintiff did not include incident dates in these grievances as required by Section 504(F) of the Illinois Administrative Code. Grievance No. 06-21-018, discussed below, shows that when Plaintiff complied with the procedural rules for filing grievances, his grievances were reviewed on the merits, and his administrative remedies could be exhausted. He did not

comply with the rules with respect to grievances No. 05-21-054, No. 06-21-101, and No. 08-21-063, and they were not reviewed on the merits by the ARB. It follows that these grievances did not exhaust Plaintiff administrative remedies.

The two remaining grievances, No. 06-21-018 and No. 08-21-225, also did not exhaust Plaintiff's administrative remedies against Defendant Kelley. While Grievance No. 06-21-018 was exhausted, it did not identify Defendant Kelley and thus it did not exhaust Plaintiff's remedies against her. As noted above, the grievance claims that a correctional officer, the warden, and several prison officials involved in work assignments retaliated against Plaintiff, but it does not mention Defendant Kelley. The grievance also specifies that the people that allegedly retaliated against Plaintiff were people against whom Plaintiff had previously filed grievances or lawsuits. Defendant Kelley was not named or described as one of those people.

Furthermore, the remedy that Plaintiff requested was to be returned to his work assignment. Plaintiff did not allege facts to support an inference that Defendant Kelley was involved in the alleged retaliation against him. The only plausible identification of Defendant Kelley is an admission in the grievance that Plaintiff could not show that "healthcare staff, MHP, or Counselor Musgrove were complicit in the deprivations against [him]." (Doc. 50-2, p. 71). Even assuming that "MHP" was sufficiently precise to identify Defendant Kelley, the claims in the grievance do not demonstrate a link between Defendant Kelley and the retaliation Plaintiff alleges that he suffered. Even where the grievance discussed Plaintiff being put on suicide watch and then returned to his cell,

which forms the basis for Plaintiff's claim in this case against Defendant Kelley, the grievance did not identify her.

It is not clear whether Grievance No. 08-21-225 was fully exhausted. While the G/O and ARB appear to have reviewed (and denied) the grievance on the merits, they also appear to have interpreted the grievance only as an allegation that a prior grievance was mishandled. However, this grievance did not identify Defendant Kelley as someone who allegedly violated Plaintiff's rights. On the contrary, it mentioned that she deemed a prior grievance (No. 05-21-054) to be an emergency and placed him on suicide watch when he was "on the brink of causing possible irreparable harm to [him]self." (Doc. 50-2, p. 12). Plaintiff stated later in the grievance that he was going to file a lawsuit against the warden for deliberate indifference to his mental and physical health, but he did not mention Defendant Kelley in that context. Grievance No. 06-21-018 and No. 08-21-225 could not have put prison officials on notice of potential misconduct by Defendant Kelley, nor could they have given the prison administration an opportunity to remedy that potential misconduct. As a result, they did not exhaust Plaintiff's administrative remedies against Defendant Kelley.

The Court finds that Plaintiff's allegations regarding interference with his ability to pursue administrative remedies do not need to be resolved by a jury. In *Perttu v. Richards*, 605 U.S. 460, 479 (2025), the Supreme Court held that, where a factual dispute concerning exhaustion of administrative remedies is sufficiently intertwined with the merits of a claim, the dispute must go to a jury. There, the issues were intertwined because the basis of the plaintiff's claim was that the defendant retaliated against him by

interfering in the grievance process. Thus, any analysis of whether administrative remedies were unavailable to the plaintiff would have made factual findings that also went to the merits of the plaintiff's claim. That is not so in this case. Here, Plaintiff has not alleged that Defendant Kelley interfered in the grievance process. It follows that factual findings as to whether Plaintiff exhausted his administrative remedies against Defendant Kelley do not affect the substance of his allegations against her. Accordingly, Plaintiff is not entitled to a jury trial on the factual issues that pertain to exhaustion of administrative remedies.

## CONCLUSION

For the reasons outlined above, Defendant's Motion for Partial Summary Judgment is **GRANTED**. (Doc. 49).

**IT IS SO ORDERED.**

DATED:  March 30, 2026.

Gilbert C Sison
Digitally signed by
Gilbert C Sison
Date: 2026.03.30
12:43:06 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**